871 F.2d 155
 276 U.S.App.D.C. 358
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
CONSOLIDATED GAS COMPANY OF FLORIDA, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 88-1321.
 United States Court of Appeals, District of Columbia Circuit.
 March 8, 1989.
 
 Before RUTH B. GINSBURG, SILBERMAN and BUCKLEY, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record from the Federal Energy Regulatory Commission and was briefed and argued by counsel for the parties. The court has reviewed the issues presented and finds they occasion no need for a published opinion. See D.C.Cir.R. 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by the court that the petition for review be denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15. This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 Consolidated Gas Company again petitions for review of two Federal Energy Regulatory Commission orders declaring that the Florida Gas Transmission Company ("FGT") is not obliged to finance a lateral line connecting the two companies' distribution systems. In March 1986, we vacated two prior orders insofar as they related to this same issue and reminded the Commission of its "obligation to engage in reasoned decisionmaking by providing an explanation for accepting" one of two possible interpretations of the applicable FGT tariff. Consolidated Gas Co. v. FERC, No. 85-1040 at 4 (D.C.Cir. Mar. 4, 1986) ("Memorandum Opinion"). FERC subsequently issued a new order reaffirming its original position, Consolidated Gas Co. of Florida v. Florida Gas Transmission Co., Opinion No. 225-B (1987), as well as one denying Consolidated's application for rehearing, Opinion No. 225-C (1988).
 
 
 5
 We recapitulate the essential facts: In its Opinion No. 225, issued September 19, 1984, the Commission ordered FGT to supply Consolidated with natural gas but held that the applicable FGT tariff ("Tariff II") required that Consolidated pay the cost of the lateral line even though the tariff was silent on the obligation of new customers to assume such costs. The Commission reasoned that as the tariff explicitly required existing customers to absorb the cost of new laterals, they would be subject to undue discrimination if new customers were not required to do the same. Consolidated Gas Co. v. Florida Gas Transmission Co., 28 F.E.R.C. p 61,350 (1984). FERC denied Consolidated's application for rehearing of this latter holding in its Opinion No. 225-A, Consolidated Gas v. Florida Gas Transmission Co., 29 F.E.R.C. p 61,205 (1984).
 
 
 6
 When we considered Consolidated's petition for review of those orders, we recognized that the case involved two conflicting claims of undue discrimination in violation of section 4(b) of the Natural Gas Act. 15 U.S.C. Sec. 717c(b) (1982). The first was FGT's claim that Tariff II would unduly discriminate between new and existing customers if Consolidated's position were to prevail; the second, Consolidated's claim that undue discrimination would result if the Commission's and FGT's position were accepted because, under the previous tariff ("Tariff I"), FGT had financed the construction of lateral lines to most new customers, including Consolidated's competitors. We stated that
 
 
 7
 [t]he fatal flaw in the Commission's decision is that in an effort to avoid one type of discrimination, they have apparently allowed a separate type. Consolidated points out that nearly all of Florida Gas' existing customers had their initial lateral lines paid for by FGT when they were new customers. To change this policy now, the argument goes, and require a new customer to pay for its initial line, would discriminate against Consolidated. FERC simply does not explain why these facts do not implicate the Commission's antidiscrimination policy.
 
 
 8
 Memorandum Opinion at 2-3. Accordingly, we vacated Part IV and Order "D" of Opinion No. 225 (the sections dealing with lateral line issue) and all of Opinion No. 225-A, and remanded to FERC.
 
 
 9
 In the two orders now challenged, Opinion No. 225-B (Order on Remand issued Mar. 30, 1987) and Opinion No. 225-C (Order Denying Rehearing issued Mar. 2, 1988), the Commission reaffirmed its earlier conclusion that FGT had properly interpreted Tariff II to require new customers to pay the cost of lateral lines. The Commission justified this conclusion in two ways: First, it stated that principles of statutory construction so required:
 
 
 10
 Interpreting Tariff II so as to require existing customers to pay for their sales lateral construction while not requiring new customers (like Consolidated) to pay for their sales lateral construction, would confer a preference or cost advantage to new customers. Such disparate treatment would violate section 4(b) of the NGA unless there is a reasonable basis for the disparity or there are facts which justify such disparity. ... It is well settled that contracts or other written instruments should be interpreted to avoid a possible violation of law. For this reason, and because, in our view, a contrary interpretation would be unduly discriminatory, we construe the tariff provision in question as requiring Consolidated to pay for the construction of a new sales lateral.
 
 
 11
 Opinion No. 225-B at 4-5, J.A. 153-54.
 
 
 12
 Second, FERC asserted that its interpretation did not result in undue discrimination against Consolidated because, as a result of fundamental changes that had occurred in FGT's gas distribution business, it was not appropriate to compare the treatment of new customers under the two tariffs. According to FERC,
 
 
 13
 in the 1960's FGT contributed to the cost of initial laterals for service to new communities when it eagerly sought to obtain new customers and market plentiful supplies of gas. During the 1970's, when Tariff I was in effect, interstate pipelines (like FGT) were faced with gas shortages and, as a result, began curtailing system supplies to their customers. Toward the end of the 1970's and in the early 1980's, the curtailments eased and the interstate gas market transformed into a surplus deliverability gas market. Given these fundamental changes, it is not surprising that FGT decided to revise its contribution policy in 1982.
 
 
 14
 Id. at 6, J.A. 155. FERC concluded that these changed circumstances rendered FGT's change in policy both "reasonable and within its legitimate managerial prerogative." Id.
 
 
 15
 The Commission's first explanation is unacceptable. In essence, it asserts that an interpretation of Tariff II that would treat new and existing customers differently is presumptively discriminatory. This position contradicts, without explanation, the one set forth in the Commission's Statement of Lateral Line Policy in Rate Schedules Filed by Natural Gas Pipeline Companies, which asserts that "[t]here is nothing inherently objectionable in a policy statement which creates separate sets of criteria with respect to new and existing purchasers...." 40 F.P.C. 46, 48 (1968).
 
 
 16
 Nevertheless, thanks in large part to the more ample discussion contained in the FERC and Intervenor briefs, we are able to discern, in the Commission's second rationale, an acceptable basis for its decision: When a natural gas transmission pipeline is engaged in a major expansion, it will provide inducements in order to tie new markets into its system; at the same time, its ability to spread the cost of a major expansion over a larger base of customers will enable it to achieve savings in the unit price of the gas it sells. When a pipeline is operating at capacity, however, the addition of a new customer will not accrue to the benefit of the system as a whole, and pipeline management may properly expect a new consumer to absorb the full cost of the service it seeks.
 
 
 17
 We agree with the Commission that it is not here relevant that FGT has filed an application for a waiver of its present lateral payment policy (the one existing under the successor tariff to Tariff II), which explicitly requires new as well as existing customers to finance laterals, because that application contemplates a new period of expansion. We note, however, that should the application be granted, there is nothing to prevent Consolidated from seeking FGT payment for its lateral at that time.
 
 
 18
 Although the meagerness of FERC's explanation tempts us to remand the case yet again, considerations of judicial economy counsel against our doing so. Accordingly, for the reasons herein stated, the petition for review is
 
 
 19
 Denied.